# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 24-cr-256-CKK** |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN BRENT BUCHANAN,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE
## DEFENDANT'S PROPOSED EVIDENCE AND ARGUMENT
## IN SUPPORT OF A DIMINISHED CAPACITY DEFENSE

The government requests that this Court issue an order precluding defendant Kevin Brent Buchanan ("the defendant") from offering evidence or argument at trial in support of a diminished capacity defense. The defendant has noticed an intent to introduce both expert and lay opinion evidence in support of the conclusion that "he likely was unable to formulate the requisite specific intent to violate the statutes pursuant to which he is charged in the indictment," namely 18 U.S.C. § 875(c) (threatening interstate communications). *See* Exhibit A ("Def.'s Notice") at 1-2. The evidence outlined in defendant's notice runs afoul of the Insanity Defense Reform Act, Federal Rules of Evidence 403, 701, 702, 703, and 704(b), and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Accordingly, this Court should grant this motion and preclude the defendant's proposed evidence and argument.

## BACKGROUND

A grand jury indicted the defendant on three counts of violating 18 U.S.C. § 875(c) for making threatening interstate communications. ECF No. 25. Specifically, the defendant called the victim ("Organization 1") five times over the course of three days, between October 31, 2023, and November 2, 2023. Each time, the defendant's call was directed to Organization 1's voicemail

box, and each time, the defendant left a voicemail message. These messages were subsequently reviewed by members of Organization 1's staff.

On October 31, 2023, the defendant left the first in the series of five threatening messages on Organization 1's voicemail box:

> You stupid pieces of fucking evil Nazi shit. Don't think we're not watching you. We know who you are, who your families are. I'm glad you're sticking your ugly heads up Palestine. Well, you know what, you're being cataloged. You're being photographed. We're gonna know who your families are. We're gonna know where you live. You're gonna be tracked. You're fucking D.M.W – that means dead man or woman walking. You are the enemy. You are a threat to the national security of the United States, and you are fucking going to get what's coming to you very, very, very soon, you pieces of Palestinian shit . . . . Come to middle America and try to do what you're doing. You pieces of sacks of shit. Dead person walking. That's all you are, pieces of shit. You're gonna die.

On November 1, 2023, the defendant again called Organization 1 and left two more voicemail messages, establishing a pattern of similar threats:

> You are a small fucking minority, and you are dead. You are fucking stinking rotten pieces of shit. I can hardly wait until the balloon goes up . . . . This is a war against Islam. We are going to wipe them the fuck out . . . . I'm glad you're showing your face because we're documenting you, your families, and everything . . . . You're not Americans. You're fucking traitors. And you're going to fucking die . . . . You are going to fucking die. You shit heads . . . . Palestinians are going to die. By the hundreds of thousands . . . . You're just all kinds of fucked up and stupid, and that's why you're going to die.

> Guess what motherfuckers? You stinking piece of shit terrorists. You are a threat to the national security of the United States. Well guess what? The Hells Angels have quietly declared war on you. So you just go ahead and parade around, do what you want, but you're marked. You're dead people walking. You're all gonna fucking die because you're enemies of the United States . . . . You are fucking traitors and you're gonna die. And I'm gonna love it. So are your families, motherfucker pigs.

The next day, November 2, 2023, the defendant left two more voicemail messages directed at Organization 1. In this third set of messages, the defendant escalated the graphic and specific nature of his threats to Organization 1 and included demands that Organization 1 engage with the defendant:

You know what, people are following you. They're watching your families. I hope your families get raped. I hope your wives and children get raped and beheaded. I really do . . . . You're a minority in America . . . . I'm gonna fucking burn the goddamn Koran. What are you going to fucking do to stop me? Why don't you call me back you brave defenders of Palestine. Those chicken shits I fought them in Iraq and killed plenty of them . . . . You guys are going to die. You guys are going to die violently. You are enemies of the United States . . . .

You lying sack of shit. You're afraid to answer the phone because you've been overwhelmed by death threats. This isn't a death threat. Everybody's gonna die. And you motherfuckers are gonna die. You pieces of shit. Israel's god's chosen people. Islam means wild donkey man. So you know what? I hope every Muslim in the United States fucking croaks. I hope there's a battle between Christianity and Islam because Christian—and Judaism. Jews and Christians will kick their ass. I fought in Iraq. I fucking happen to know a punk ass chicken shit when I see one. So you either call me back and arrange a meeting 'cause you're fucking full of shit man. You're the enemy. You're the enemies of this country. You're a threat to me and my family. But you know what? Your families are going to be followed and watched. Every time you have a meeting we are going to infiltrate your organization . . . know who your families are, your mothers, your fathers, your sisters, brothers, and so forth and so forth. I would be deathly afraid if I were you. You are all going to fucking die you pieces of shit. Traitors. You don't even belong in America . . . .

For this repeated, threatening conduct towards Organization 1 over multiple days, the defendant has been charged with three counts of violating Section 875(c) – one count for each day. *Id*.

## LEGAL STANDARDS

The defendant's proposed evidence and argument are subject to the following interrelated evidentiary rules.

### I.    Expert Testimony

Federal Rule of Evidence 702 principally governs admission of expert testimony. The party seeking to present the expert's testimony must convince the court of its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 592 & n.10 (1993), *see also United States v. Libby*, 461 F.Supp.2d 3 (D.D.C. 2006). In all instances, the

proffered expert must be qualified "by knowledge, skill, experience, training, or education," and the testimony must be helpful to the trier of fact. Fed. R. Evid. 702; *United States v. Sutton*, 642 F.Supp.3d 57, 64 (D.D.C. 2008). Generally, the testimony must be "based upon sufficient facts or data" and must also be "the product of reliable principles and methods," applied "reliably to the facts of the case." *Id.*

Accordingly, under *Daubert*, the district court must address two questions when evaluating the admissibility of expert testimony: first whether the expert's testimony is based on "scientific knowledge," and second, whether the testimony "will assist the trier of fact to understand or determine a fact in issue." *Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1126-1127 (D.C. Cir. 2001). Under this helpfulness inquiry, the court must determine that there is a "link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case." *United States v. Childress*, 58 F.3d 693, 730 (D.C. Cir. 1995) (noting that "[w]hile [the defendant's] mental capacity does not 'excuse' him from culpability for his activity . . . it may well be relevant to whether the government proved an element of" the crime).

## II. The Insanity Defense Reform Act

In 1984, Congress passed the Insanity Defense Reform Act ("IDRA") to prohibit the defenses of "diminished capacity" and "diminished responsibility," such as those proposed by the defendant. *United States v. Pohlot*, 827 F.2d 889, 890 (3d Cir. 1987). These defenses that Congress aimed to preclude previously had allowed "exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection; however, these matters do not strictly negate *mens rea*." *Id.* The IDRA clarified that mental disease or defect would not, as a general matter, constitute a defense and created an "an affirmative defense to a prosecution under any Federal statute that, at the time of the

commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a). The IDRA thus abolished the volitional prong of the Model Penal Code approach to insanity, "which had permitted acquittal if the defendant 'as a result of a mental disease or defect . . . lacks substantial capacity . . . to conform his conduct to the requirements of the law.'" *Pohlot*, 827 F.2d at 896 (quoting Model Penal Code § 4.01 (1962)). The IDRA "also shifted the burden of proof, requiring the defendant to prove insanity by clear and convincing evidence." *Id.*; *see also* 18 U.S.C. § 17(b). Concurrent with the passage of the IDRA, Congress amended Federal Rule of Evidence 704(b). *See Childress*, 58 F.3d at 728. That provision now provides, "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b).

Courts have held that expert "mental condition evidence survives the enactment" of the IDRA and amended Federal Rule of Evidence 704(b) only where certain criteria are met, that is, "where (a) the evidence is admitted not as an affirmative defense to excuse the defendant from responsibility for his acts, but to negate specific intent when that is an element of the charged act itself . . . and (b) the expert limits his testimony to his diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental diseases or defect the experts believe the defendant possessed during the relevant time period, staying clear of directly or indirectly opining on the [ultimate] issue of specific intent . . . ." *Childress*, 58 F.3d at 728 (citations and quotation marks omitted).

"Evidence offered as psychiatric evidence to negate specific intent is admissible . . . when such evidence focuses on the defendant's specific state of mind at the time of the charged offense."

5

*United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990) (quotation marks omitted); *see also United States v. Hardy*, 730 F. Supp. 1140, 1144 (D.D.C. 1990) ("when a defendant is charged with a general intent crime, as is the case here, evidence concerning a defendant's mental condition becomes irrelevant and confusing to a jury"). Negating *mens rea* is "directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime." *United States v. Twine*, 853 F.2d 676, 678 (9th Cir. 1987). Evidence that a defendant suffers from some mental illness or deficits is not, by itself, sufficient to trigger a diminished capacity instruction. *See United States v. Christian*, 749 F.3d 806, 815 (9th Cir. 2014). The D.C. Circuit requires that such evidence be "adequately keyed to the issue of whether [a defendant] entertained the *mens rea* required for proof of the crime" and warned against "more general testimony about the defendant's mental condition where it is divorced from the intent elements of the crime and 'slides into wider usage that opens up the jury to theories of defense more akin to justification.'" *Childress*, 58 F.3d at 729 (quoting *Pohlot*, 827 F.2d at 905); *see also United States v. Davis*, 863 F.3d 894, 907 (D.C. Cir. 2017) ("'[M]ental condition evidence' is only admissible to establish diminished capacity if 'adequately keyed to the issue of whether [the defendant] entertained the *mens rea* required for proof of the crime.'" (citing *Childress*, 58 F.3d at 729)). Thus, this Court must "examine proffered psychiatric testimony carefully 'to determine whether the proof offered is grounded in sufficient scientific support to warrant use in the courtroom, and whether it would aid the jury in deciding the ultimate issues.'" *Pohlot,* 827 F.2d at 905 (citing *United States v. Brawner*, 471 F.2d 969 (D.C. Cir. 1972); *see also Childress*, 58 F.3d at 730.

### III.     Federal Rule of Evidence 403

Courts have recognized that expert psychiatric testimony can present a significant risk of jury confusion, implicating Federal Rule of Evidence 403. *See, e.g. Pohlot*, 827 F.2d at 890

("Psychiatrists are capable of supplying elastic descriptions of mental states that appear to but do not truly negate the legal requirements of *mens rea* . . . . Presenting defense theories or psychiatric testimony to juries that do not truly negate *mens rea* may cause confusion about what the law requires.").  Accordingly, courts may preclude the admission of even relevant psychiatric evidence.  *See, e.g., United States v. Rogers*, 2006 WL 5249745, at *6 (D.D.C. July 17, 2006) ("Courts may exclude relevant psychiatric evidence . . . because . . . [it] (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury from focusing on the actual presence or absence of *mens rea*, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification."); *see also Davis*, 78 F.Supp.3d at 21 (excluding expert psychiatric testimony about a defendant's "symptoms of ADHD" under Rule 403 "because its probative value, if any, is substantially outweighed by the danger of misleading the jury").

## ARGUMENT

The defendant's proffered evidence concerning the defendant's alleged diminished capacity should be excluded.  A diminished capacity defense is unavailable to the defendant because the defendant has failed to meet the standards for its admissibility under the IDRA, the Federal Rules of Evidence, and *Daubert*.  Specifically, the defendant's proposed evidence could not negate the *mens rea* element of Section 875(c), nor does it meet the requirements that expert opinion testimony be non-conclusory and based in sufficient facts or data and on reliable principles and methods applied reliably to the facts of the case.

Additionally, the lay opinion witnesses should be excluded because they cannot serve as a hearsay conduit, in violation of Federal Rules of Evidence 701 and 703, to impermissibly admit irrelevant evidence intended to provoke jury nullification.

I.        **Defendant's Proposed Evidence**

On January 13, 2025, the defendant provided the government with notice that he intends to offer both expert and lay opinion evidence that he suffers from mental health conditions that prevented him from forming the intent necessary to commit the crimes charged.  *See generally* Def.'s Notice.  Notably, the defendant has not given notice that he intends to raise an insanity defense pursuant to Federal Rule of Criminal Procedure 12.2.  *Id.*

Specifically, the defendant intends to call Dr. Glen E. Johnson, a medical doctor and board-certified psychiatrist who has "worked with [the defendant] since 2014," as an expert to support his diminished capacity defense.  *Id.,* at 6.  According to the defendant's notice, Dr. Johnson would testify that the defendant suffered from "chronic post-traumatic stress disorder, as well as panic disorder with anger susceptibility to undefined stress and uncertainty," [meaning that the defendant] is prone to react reflexively and with poor impulse control."  *Id.*, at 1, 6.  The defendant intends to have Dr. Johnson opine that "when [the defendant] contacted the organization in question, he likely was unable to formulate the requisite specific intent to violate the statutes pursuant to which he is charged in this indictment," that is, Section 875(c), which "opinion is based on [the defendant's] meeting the diagnostic criteria for these mental health disorders."  *Id.*, at 1-2. In a letter dated March 29, 2024, and attached to the defendant's notice, Dr. Johnson sets forth his understanding that the defendant "received a scam call triggering strong feelings regarding Palestinians that was unprovoked and unsolicited.  As a result of this, he became very angry and in responding to this created considerable distress in the justice system . . . . . I feel he poses no risk to anyone . . . . [The defendant] is functionally disabled by his diagnoses . . . . The events, of which I only have partial information, triggered his PTSD and panic issues, leading him to lose his temper, which has been a chronic problem."  *Id.*, at 6-7.

8

The defendant further intends to call family members, including his spouse and two sons, to provide lay opinion testimony to advance the defendant's purported diminished capacity defense. *Id.*, at 2, 8.[1] Defendant proposes these witnesses testify that the defendant "is impulsive, quick to anger, with little self-control when he feels provoked, and otherwise exhibits symptoms observed by Dr. Johnson." *Id.*

## II. Defendant's Proposed Expert Testimony is Inadmissible Under the IDRA, FRE 403, 702, 704(b), and the *Daubert* Standards

The defendant's expert evidence should be excluded because it does not meet the admissibility requirements of the IDRA, Federal Rules of Evidence 403, 702, 704(b), and *Daubert*. Here, the defendant's proffered expert evidence is neither based upon sufficient facts or data and reliable principles and methods applied reliably to the facts of this case, nor helpful to the jury in determining a fact in issue. To the contrary, the defendant's proffered evidence has no tendency to negate specific intent under Section 875(c);[2] rather, it is "exactly the kind of diminished capacity

---

[1] The defendant added additional witnesses to this category through an email to counsel two days following his January 13, 2025, notice. Additionally, the defendant's notice indicates it was filed with he Court. Def.'s Notice at 3. However, the government received the notice via email, and to date, the docket does not show that the notice had been filed with the Court.

[2] A diminished capacity defense is never available where the offense requires only a *mens rea* of general intent. *See Childress*, 58 F.3d at 727 (citing *United States v. Hardy*, 730 F. Supp. 1140, 1144 (D.D.C. 1990) ("[W]hen a defendant is charged with a general intent crime, as is the case here, evidence concerning a defendant's mental condition becomes irrelevant and confusing to a jury."). The *mens rea* required to violate Section 875(c) has not been resolved by the D.C. Circuit. *Compare Elonis v. United States*, 575 U.S. 723, 740 (2015) (holding that the intent element of Section 875(c) is established by showing that the defendant transmitted the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat"), *with Counterman v. Colorado*, 600 U.S. 66, 75 (2023) (holding that the First Amendment requires the government to prove in a criminal "true threats" prosecution that the defendant subjectively understood the threatening nature of his statement but that a mental state of recklessness is constitutionally sufficient); *see also United States v. Dierks*, 978 F.3d 585, 591 (8th Cir. 2020) ("*Elonis* significantly undercut [earlier Circuit precedent] *Nicklas* by establishing that § 875(c) is a specific intent crime."). For purposes of this motion, the Government assumes without conceding that Section 875(c) is a specific intent crime.

evidence the IDRA sought to forbid." *Rogers*, 2006 WL 5249745, at *18. Specifically, the defendant has failed to show that Dr. Johnson's proffered opinion is based upon sufficient scientific knowledge applied to this case to qualify as an admissible expert opinion or that Dr. Johnson's opinion is linked to the defendant's state of mind at the time of the offenses such that it would negate the defendant's specific intent. Moreover, even if Dr. Johnson's testimony were otherwise admissible, it should be excluded because the probative value of the evidence is substantially outweighed by the danger of undue prejudice by confusing the issues and misleading the jury.

First, Dr. Johnson's opinion is not based upon sufficient knowledge, experience, or expertise, reliably applied to the facts of this case, for admissibility. Dr. Johnson's Curriculum Vita reflects that he is a general practice psychiatrist with no specialized training or experience in forensic matters necessary to offer an opinion concerning the defendant's capacity to commit the charged offenses. Def.'s Notice at 4-5. Further reflecting his lack of expertise in forensic matters, Dr. Johnson has no publications within at least the past ten years and no testimony at trial or deposition within at least the last four years. *Id.*, at 2. Notably, in none of the supporting materials provided by the defendant does Dr. Johnson purport to be qualified to offer expert testimony on *mens rea* capacity or familiarity with the requirements of the applicable statute, Section 875(c). *See id.*, at 4-7. The only reference to *mens rea* is in the defendant's summary notice, where the defendant states that Dr. Johnson will opine that the defendant "likely was unable to formulate the requisite specific intent to violate the statutes pursuant to which he is charged in the indictment," *id.*, at 1 — but such testimony is impermissibly conclusory under Federal Rule of Evidence 704(b). *See Childress*, 58 F.3d at 728 (noting expert must "stay[] clear of directly or indirectly opining on the [ultimate] issue of specific intent"); *see also id.* ("Rule 704(b) 'exclude[s]

10

psychiatric/psychological opinion testimony on the question of whether a defendant had the capacity to form the requisite intent constituting an element of the charged offense while allowing relevant expert testimony detailing the defendant's mental health history which might have tendency to negate the prosecution's proof on the issue of intent.'' (citation and quotation marks omitted)). Because Dr. Johnson lacks the "scientific knowledge" necessary to offer an expert opinion that would be reliable and helpful to the jury on issues relevant to the defendant's capacity to commit the offenses charged at the time they occurred, he should be precluded from offering any testimony at trial. *See* Fed. R. Evid. 702; *United States v. DynCorp International LLC*, 715 F.Supp.3d 45, 54-55 (D.D.C. 2024) (under *Daubert*, the proffered expert must be qualified "by knowledge, skill, experience, training, or education," and his testimony must be helpful to the trier of fact).

Second, and relatedly, Dr. Johnson's proffered expert opinion falls short of what is required for admissibility by failing to make the "link" between the defendant's mental conditions and his *mens rea* to commit the offenses, and thus is not helpful to the jury in determining a fact in issue. Indeed, in his letter, Dr. Johnson specifically notes that he has "only partial information" regarding the events in this case. Def.'s Notice at 6-7. Trial courts must make certain that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). Expert testimony that rests solely on "subjective belief or unsupported speculation" is not reliable and should be excluded. *Daubert*, 509 U.S. at 590. Dr. Johnson's letter specifically acknowledges subjectivity, stating, "I feel [the defendant] poses no risk to anyone and the results of this recent arrest are based upon stimulation by a crank call designed to produce stress in a man who has chronic [PTSD] and panic disorder with anger susceptibility to undefined stress and uncertainty." Def.'s Notice at 6.

A review of Dr. Johnson's letter reflects his subjective understanding that the defendant "became very angry" but does not state the defendant's PTSD and panic disorder prevented him from forming the specific intent to issue true threats on the dates of the offenses; nor could Dr. Johnson do so, given his lack of expertise in that area, as discussed above. *Id*. Even assuming the reliability of Dr. Johnson's diagnoses of PTSD and panic disorder, he cannot link them to the defendant's *mens rea* at the time he committed the offenses.

Simply put, Dr. Johnson's proffered testimony is not relevant to whether the defendant possessed any requisite specific intent to commit the charged offenses. As stated in the defendant's notice, Dr. Johnson will testify that that the defendant "is prone to react reflexively and with poor impulse control," but these characteristics sound in mitigation rather than negation, as they do not prevent intent formation or demonstrate a lack of intent. *Id*., at 1. As is clear from a plain reading of Dr. Johnson's letter, the proposed expert testimony is disfavored "general testimony about the defendant's mental condition" that "is divorced from the intent elements of the crime and 'slides into wider usage that opens up the jury to theories of defenses more akin to justification,'" not evidence that is "adequately keyed to the issue of whether [a defendant] entertained the *mens rea* required for proof of the crime" as required by the D.C. Circuit. *Childress*, 58 F.3d at 729 (quoting *Pohlot*, 827 F.2d at 905).

Finally, even if the proffered expert testimony were relevant, the testimony should be excluded because its probative value is substantially outweighed by unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403. In *Rogers*, a court in this District applied this analysis and excluded expert psychological testimony. In a case involving an attorney charged with the specific intent crime of mail fraud, the defense expert would have testified about the defendant's "predispositions based on his history and life experiences." *Rogers*, 2006 WL

5249745 at *2.  The court noted that even "where evidence of a mental state is relevant to negate an element of specific intent, the court must not admit evidence that would cause undue prejudice or confusion."  *Id*, at *16.  In excluding the testimony, the court found:

> Here, [the expert's] opinions concerning Rogers' capacity and susceptibility could easily mislead the jury into exactly the kind of diminished capacity defense that the IDRA sought to forbid, and that risk substantially outweighs the testimony's limited relevance.  This is especially so since the testimony does not establish an inability to deceive, the nub of a *mens rea* defense here.  It may well be that Rogers was working beyond capacity, but that goes no distance toward negating the proposition that he could and did intentionally make the affirmative misrepresentations alleged in the indictment with the intent to deceive.

*Id*, at *18.

Here, as stated above, Dr. Johnson's proffered testimony fails to show that the defendant lacked the requisite intent to commit the charged true threats offenses.  Assuming Dr. Johnson's diagnoses are correct, the proposed testimony nevertheless fails to negate the defendant's specific intent to commit the crimes.  The expert testimony would only serve to impermissibly present potentially sympathetic information about defendant's background, experiences, and hardships to the trier of fact in a way that would likely confuse the jury.  The evidence should be excluded.

## III. Defendant's Proposed Lay Opinion Testimony Is Inadmissible Under Federal Rules of Evidence 701 and 703

Nor should the defendant's family member witnesses be permitted to testify about defendant's history or background related to his mental disease, defect, or condition.  Federal Rules of Evidence 701 and 703 prohibit the admission of hearsay evidence underlying lay and expert opinion testimony unless it is "helpful to clearly understanding the witness's testimony or to determining a fact in issue," or its "probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 701, 703.  A witness may not simply act as a conduit by which hearsay evidence is transmitted to the jury unless the probative value of the disclosure in helping the jury evaluate an admissible expert opinion outweighs the prejudicial

effect.  Fed. R. Evid. 703; *see United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (citing *United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) ("When an expert is no longer applying his extensive experience and a reliable methodology, *Daubert* teaches that the testimony should be excluded.").

In his notice, the defendant explains that family members will offer lay opinion testimony purportedly to support Dr. Johnson's expert testimony advancing defendant's diminished capacity defense.  *See* Def.'s Notice at 2.  The anticipated background testimony these witnesses will offer as lay opinion evidence is inadmissible hearsay because Dr. Johnson's expert testimony should be excluded for the reasons articulated above.  Even if relevant and admissible, the lay opinion evidence violates Rule 403 for prejudice and confusion.  Such background evidence concerning the defendant only serves to present otherwise inadmissible information to the jury, with the impermissible effect of inducing jury nullification.  *See United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1985) (explaining that verdicts on nullification are "lawless, a denial of due process and constitute an exercise of erroneously seized power.").

Indeed, none of this information is "adequately keyed" to the defendant's state of mind on the dates he issued the threats to Organization 1, nor does it shed light on whether he was capable of possessing the requisite intent under the law to commit the crimes at issue.  *Childress*, 58 F.3d at 729.  This information is relevant only to nullification, not negation of intent.  Accordingly, such lay opinion testimony from any defense witness must be excluded.

## CONCLUSION

The government requests that this Court issue an order precluding defendant Kevin Brent Buchanan from introducing evidence or argument concerning any diminished capacity defense.

Respectfully submitted,

KATHLEEN WOLFE
DEPUTY ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

*/s/ Sanjay H. Patel*
SANJAY H. PATEL
IL Bar No. 6272840
Trial Attorney
Criminal Section
Civil Rights Division
4 Constitution Square
150 M St. NE, 7.121
Washington, D.C. 20530
Telephone: 202-307-6188
Email: Sanjay.Patel@usdoj.gov


EDWARD R. MARTIN
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 481866

*/s/ Elizabeth Aloi*
ELIZABETH ALOI
D.C. Bar No. 1015864
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, NW
Washington, D.C. 20579
Telephone: (202) 252-7212
Email: Elizabeth.Aloi@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 24-cr-256-CKK** |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN BRENT BUCHANAN,** | : | |
| | : | |
| **Defendant.** | : | |

### ORDER

      **AND NOW**, this _____ day of _____2025, after reviewing the submissions by the Government and defense counsel, and a hearing on this matter;

      It is hereby **ORDERED** that the Government's motion to preclude defendant Buchanan's diminished capacity defense is **GRANTED**.

**BY THE COURT:**

_____

**THE HONORABLE COLLEEN KOLLAR-KOTELLY**

United States District Judge