UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 24-cr-256-CKK |
| v. | : | |
| KEVIN BRENT BUCHANAN, | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE DEFENDANT'S PROPOSED EVIDENCE AND ARGUMENT <u>IN SUPPORT OF A DIMINISHED CAPACITY DEFENSE</u>**

The United States of America, by and through the undersigned counsel, respectfully submits the following reply in support of its motion *in limine* to preclude the Defendant's evidence and argument related to a diminished capacity defense. *See* ECF No. 47. As the proponent of the evidence, the Defendant bears the burden of establishing its admissibility. *See United States v. McGill*, 815 F.3d 846, 903 (D.C. Cir. 2016). He has not and cannot do so. As explained below, among other things, the proposed testimony seeks to present improper diminished capacity justifications, lacks sufficient reliability and relevance, will not assist the trier of fact, and presents a substantial risk of misleading and confusing the jury while unduly prejudicing the government. The proposed testimony should be excluded in its entirety.

**ARGUMENT**

**I.    The Defendant Is Not Asserting An Insanity Defense.**

The Defendant's expert notice (ECF No. 47-1) is thin on substance and cursory in form, but broad in potential application. It is unclear whether the notice seeks to comply with Fed. R. Crim. P. 12.2(a), which governs notice of an insanity defense and triggers application of the Insanity Defense Reform Act (IDRA), or Fed. R. Crim. P. 12.2(b), which covers "notice of expert

1

evidence of a mental condition." The Defendant's opposition continues to equivocate on this critical point. It provides a conclusory statement that the proposed "testimony meets the criteria for such testimony that are prescribed by the [IDRA]." ECF No. 49 at 2. But nowhere has an affirmative insanity defense clearly been asserted.

The plainest reading of the materials is that the Defendant is <u>not</u> asserting an insanity defense, but rather is pursuing the types of diminished capacity justifications that the IDRA sought to forbid. As expressed in the government's motion, that should not be allowed. *See* ECF No. 47 at 11-13.

**II.    The Defendant's Expert Cannot and Must Not Invade The Jury's Provence By Opining On Whether The Defendant Had The Mental State That Constitutes An Element Of The Charges Or A Defense.**

The Defendant's proffered testimony fares no better under the Federal Rules of Evidence. Rule 704(b) provides a bright-line directive: "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." *See also United States v. Childress*, 58 F.3d 693, 728 (D.C. Cir. 1995) (Rule 704(b) "exclude[s] psychiatric/psychological opinion testimony on the question of whether a defendant had the capacity to form the requisite intent constituting an element of the charged offenses"). In defiance of this rule, the Defendant's expert notice states that Dr. Johnson will testify that "to a reasonable degree of medical and scientific probability, when [the Defendant] contacted the organization in question, he likely was unable to formulate the requisite specific intent to violate the statute pursuant to which he is charged in the indictment." ECF No. 47-1 at 1-2. This testimony is impermissible. It unambiguously violates Rule 704(b)'s unambiguous dictate. Notably, the

2

defense makes no attempt to address this dispositive point. The Court must exclude the conclusory proposed expert testimony on whether the Defendant had the requisite mental state.

    **III.    Dr. Johnson's Expert Testimony Should Be Excluded Because It Is Unreliable, Irrelevant, And Will Not Assist the Jury.**

The Defendant also fails to demonstrate how Dr. Johnson's proposed testimony meets the standards of Fed. R. Evid. 702 and 703.

The twin pillars for admissibility of expert testimony under those rules are reliability and relevance. *See generally Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (discussing *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 529 (1993)); *see also United States v. Neagle*, 471 F. Supp. 2d 152, 156-57 (D.D.C. 2007) ("As the D.C. Circuit has explained, the twin requirements for the admissibility of expert testimony are evidentiary reliability and relevance") (citing collected D.C. Circuit and D.C. District Court cases). The Court serves an essential gatekeeping function in excluding expert testimony if it is insufficiently reliable or relevant. *Daubert*, 509 U.S. at 592-93.

The Defendant has not met his burden of establishing that his proffered expert opinion testimony meets these standards.

    ***A. Dr. Johnson's opinion is unreliable.***

The Defendant has not carried his burden of showing that Dr. Johnson's proffered testimony is sufficiently reliable.

Reliability is assessed by examining the methodology and reasoning underlying the proffered expert testimony. *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996); *Daubert*, 509 U.S. at 592-93 (reliability inquiry focuses on "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue"); *see also* Fed. R. Evid. 702 (proponent of the

evidence must demonstrate to the court "that it is more likely than not" that the "testimony is based on sufficient facts or data; [is] the product of reliable principles and methods; [and] reflects a reliable application of the principles and methods to the facts of the case"). "[R]eliability concerns may focus on personal knowledge or experience." *Groobert v. President & Dirs. of Georgetown Coll.*, 219 F. Supp. 2d 1, 6 (D.D.C. 2002) (citing *Kumho Tire*, 526 U.S. at 149).

The government has explained why Dr. Johnson's proffered opinions are not based upon sufficient knowledge, experience, or expertise, reliably applied to the facts of this case. *See* ECF No. 47 at 10-11. Although Dr. Johnson is a board-certified psychiatrist with over 50 years of experience, the Defendant has not shown that Dr. Johnson possesses the knowledge, training, or experience to present the proffered opinions as they relate to this matter—for example, by opining on forensic matters involving mental states needed to commit federal crimes in general or of having an adequate understanding of the facts in this specific case.

The *Daubert* inquiry focuses the court on "principles and methodology, not on the conclusions that they generate," and thus demands a grounding in the methods and procedures of science, rather than subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 590-92. Dr. Johnson's proffered testimony is riddled with problems on this front alone.

The proposed testimony is conclusory and lacks foundation. It primarily comes in the form of a roughly one-page letter dated March 29, 2024, and addressed to Magistrate Judge Harvey. The Defendant had been scheduled for a preliminary hearing on April 1, 2024, and Dr. Johnson's letter was presumably written in connection with the Court's determinations on pretrial detention or conditions of release. The letter focuses on the Defendant's risk of dangerousness. In that more limited context, Dr. Johnson still acknowledges that his risk assessment is based upon the

4

Defendant's own self-reporting and that Dr. Johnson was only provided with "partial information" about the pertinent issues. ECF No. 47-1 at 6.

Even the four corners of the letter itself contain notable errors. For example, Dr. Johnson states that he has "worked with [the Defendant] since 2014," but then later states that he has "work[ed] with [the Defendant] for seven years." *Id*. It is not clear how often Dr. Johnson met with the Defendant or whether Dr. Johnson was treating the Defendant at the time the threatening communications were made—and if the general record of general treatment is the basis for Dr. Johnson's broad conclusions, the only reflection of that basis is the March 29, 2024 letter itself.[1] Defense counsel's cursory cover notice—ultimately providing nothing more than broad conclusions set atop the speculative and undependable letter focused on dangerousness—does nothing to bolster the reliability of the proposed expert opinions. Defense counsel's opposition merely restates conclusory opinions without providing the support necessary to show that the proffered expert testimony is sufficiently reliable.

In sum, Dr. Johnson's letter demonstrates the exact sort of unreliable methodology and unsupported speculation that Court's must guard against when assessing the reliability (and thus admissibility) of expert opinions. The opinions in the letter and those carried forward from it are conclusory without support or evidence to show that they are grounded in reliable science, principles, or application. They lack the detail and bases necessary for admission. *See Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127 (D.C. Cir. 2001) (citing *Daubert*, 509 U.S. at 590) ("In order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the

---

[1] If the defense has further bases to support Dr. Johnson's proffered testimony, it must provide those to the government. *See* Fed. R. Crim. P. 16(b)(1)(C)(iii).

scientific method. Proposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known."). The testimony should be excluded in its entirety.

### B. Dr. Johnson's opinion will not assist the trier of fact.

The Defendant also fails to meet his burden of establishing that Dr. Johnson's expert opinion will assist the jury. This prong of the *Daubert* test "goes primarily to relevance." *Daubert*, 590 U.S. at 591. The proposed testimony must be a "fit" to assist the jury, which "entails a preliminary assessment of whether . . . scientifically valid . . . reasoning or methodology properly can be applied to the facts in issue." *Id.*, at 593. The Defendant has not met his burden to show why and how Dr. Johnson's proffered expert opinion has a relevant link to the pertinent factual issues that the jury will decide.

Generally speaking, the jury will be tasked with determining whether the Defendant "communicate[d] a serious expression of an intent to commit an act of unlawful violence to a particular person or group of individuals." *See United States v. Syring*, 522 F. Supp. 2d 125, 129 (D.D.C. 2007) (J. Kollar-Kotelly) (citing *Virginia v. Black*, 538 U.S. 343, 359 (2003)). As the Supreme Court has clarified, the jury will also determine whether, in making such "true threats," the Defendant acted recklessly. *See Counterman v. Colorado*, 600 U.S. 66, 98 (2023) ("for threats, the speaker need only be aware that others could regard his statements as threatening violence and delive[r] them anyway") (internal citations omitted). The Defendant fails to carry his burden to show how his proposed expert testimony can assist the trier of fact in these determinations *without* simultaneously invading the jury's province and violating Rule 704(b). For example, a conclusory assertion that the Defendant has post-traumatic stress disorder (PTSD) and sometimes acts impulsively will not assist the jury in determining whether the Defendant recklessly communicated

a serious expression of an intent to commit unlawful violence. The unreliability of the proffered expert opinions magnifies that unhelpfulness.

**IV.     The Proposed Expert Testimony Should Also Be Excluded Under Rule 403.**

The Court should also exclude Dr. Johnson's proposed expert testimony under Fed. R. Evid. 403. *See United States v. Gatling*, 96 F.3d 1511, 1523 (D.C. Cir. 1996) (expert testimony can also be precluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"); *see also Daubert*, 509 U.S. at 595 (explaining that because "[e]xpert evidence can be both powerful and quite misleading," "the judge in weighing possible prejudice against probative force under Rule 403…exercises more control over experts than over lay witnesses").

As explained above, the probative value of the proffered evidence as it relates to the facts of this case and determinations the jury will make under governing law is nonexistent. Its admission would risk a significant danger of misleading the jury, confusing the issues, and unfairly prejudicing the government.

Even if one puts aside the dictates of Rules 702, 703, and 704(b), the jury should not be misled to believe that bare assertions of things like PTSD and impulsivity justify or negate criminal recklessness. Allowing such misleading assertions would understandably confuse the jury. Use of that non-probative evidence will inevitably get the jury to focus on the Defendant's supposed prior military service and subsequent alleged related psychiatric conditions.[2] An ultimate risk (if not purpose) of that testimony will be presenting irrelevant but sympathetic evidence to invoke jury nullification. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (unfair prejudice

---

[2] *See, e.g.*, ECF No. 47 at 3 (In one of the Defendant's November 2, 2023, threats, he stated, "Those chicken shits I fought them in Iraq and killed plenty of them.")

7

"means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." (citing Advisory Committee's Notes to Rule 403)); *see also United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1985) (explaining that verdicts on nullification are "lawless, a denial of due process and constitute an exercise of erroneously seized power.").

## V.     The Defendant's Proposed Lay Opinion Testimony Should Be Excluded.

The Defendant's notice states that he will also seek to admit lay opinion testimony on the same topics covered by Dr. Johnson's proposed expert testimony. This begs many questions and raises many concerns. As is the case with Dr. Johnson's proposed expert testimony, the proposed lay opinion testimony is irrelevant and should be excluded. Admission of the lay opinions would itself call into question the necessity, propriety, and helpfulness of Dr. Johnson's expert testimony since he would be testifying on the same topics. *See, e.g.*, *United States v. Boney*, 977 F.2d 624, 628 (D.C. Cir. 1992) (Expert testimony "should ordinarily not extend to matters within the knowledge of laymen"). Admission of both the inappropriate expert and lay opinions would be doubly problematic as the Defendant's proffered lay opinion evidence concerning behaviors related to his psychiatric condition would only serve to bolster and corroborate his inadmissible expert diminished capacity evidence. And, as expressed above, in this case there is a significant risk that such testimony ultimately does nothing more than invite jury nullification.

For the purposes of this motion, it is thus sufficient to note that the proposed lay opinion testimony is independently inadmissible under Fed. R. Evid. 401 and 403, and it is even more problematic when paired with the Defendant's proposed expert testimony. If necessary, the government will be prepared to describe in future evidentiary motions *in limine* why the proposed

lay opinion evidence also risks running afoul of other requirements, such as Fed. R. Evid. 404 and 405.[3]

## CONCLUSION

For the foregoing reasons, the Court should preclude defendant Kevin Brent Buchanan from introducing improper expert and lay evidence or argument concerning any diminished capacity defense or other topics covered in the defense notice.

Respectfully submitted,

KATHLEEN WOLFE
DEPUTY ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

*/s/ Sanjay H. Patel*
SANJAY H. PATEL (IL Bar No. 6272840)
Trial Attorney
Criminal Section, Civil Rights Division
4 Constitution Square
150 M St. NE, 7.121
Washington, D.C. 20530
Telephone: 202-307-6188
Email: Sanjay.Patel@usdoj.gov

EDWARD R. MARTIN
UNITED STATES ATTORNEY
D.C. Bar No. 481866

*/s/ Timothy Visser*
Timothy Visser (D.C. Bar No. 1028375)
Assistant U.S. Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-2590
Email: timothy.visser@usdoj.gov

---

[3] Such evidentiary motions *in limine* are currently due on April 7, 2025. *See* ECF No. 40.