## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

KEVIN BRENT BUCHANAN,

Defendant.

Criminal Action No. 24-256 (CKK)

## MEMORANDUM OPINION
(April 14, 2025)

A grand jury has indicted Kevin Brent Buchanan on three counts of making threatening interstate communications, in violation of 18 U.S.C. § 875(c). *See* Superseding Indictment, ECF No. 25. Buchanan's case is set for trial beginning in July 2025. *See* Am. Pretrial Scheduling Order, ECF No. 40. Now pending before the Court is the Government's [47] Motion *in Limine* requesting an order precluding Buchanan from offering evidence or argument at trial in support of a diminished capacity defense ("Motion" or "Gov't's Mot."). Buchanan opposes the Motion. *See* Def.'s Opp'n to the Gov't's Mot. *in Limine* ("Def.'s Opp'n"), ECF No. 49. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **GRANT IN PART**, **DENY IN PART**, and **HOLD IN ABEYANCE IN PART** the Government's Motion.[2] Specifically, the Court shall preclude Buchanan's proffered expert witness from opining

---

[1] The Court's consideration has focused on the following documents:

- Defendant Buchanan's Expert Witness and Lay Opinion Designation ("Def.'s Designation"), ECF No. 47-1;
- The Government's Motion *in Limine* to Preclude Defendant's Proposed Evidence and Argument in Support of a Diminished Capacity Defense ("Gov't's Mot."), ECF No. 47;
- Defendant Buchanan's Opposition to the Government's Motion *in Limine* ("Def.'s Opp'n"), ECF No. 49; and
- The Government's Reply in Support of its Motion *in Limine* to Preclude Defendant's Proposed Evidence and Argument in Support of a Diminished Capacity Defense ("Gov't's Reply"), ECF No. 50.

[2] The Court expresses no view at this time on the Government's recent [51] Omnibus Motion *in Limine*, which is not yet ripe for decision.

on the ultimate issue of whether Buchanan had the mental state necessary to commit the crimes charged. The Court shall also order Buchanan to produce a revised Rule 16(b)(1)(C) expert disclosure statement specifying the scope of and basis for any other expert opinion that his proffered expert witness may present to the jury. And the Court shall set an evidentiary hearing to evaluate the proffered expert witness's qualifications and the scope of and basis for any potentially admissible expert witness testimony. Finally, the Court shall allow Buchanan to introduce lay witness opinion testimony that is relevant to whether he was conscious of wrongdoing at the time of the alleged acts for which he is charged in this case, provided that such testimony must be rationally based on each witness's own perception. The Court shall otherwise defer ruling on the Government's Motion until the relevant issues arise at the forthcoming evidentiary hearing or at trial.

## I. BACKGROUND

The Government alleges that, over the course of three days beginning in late October 2023, Buchanan left five threatening voicemails for an organization—known in this case as "Organization 1"—that is headquartered in this District. *See* Gov't's' Mot., ECF No. 47, at 1–2; Superseding Indictment, ECF No. 25. The Government alleges that Buchanan recorded these voicemails from Utah. *See* Superseding Indictment ¶¶ 4, 6, 8. It further alleges that Buchanan selected Organization 1 as the object of his threatening messages based on "race, color, religion, national origin, and ethnicity." *Id.* ¶ 10.

For this alleged conduct, a grand jury charged Buchanan by superseding indictment with three counts of making threatening interstate communications, in violation of 18 U.S.C. § 875(c), enhanced by a special finding that Buchanan selected the "object of the offense[s]" because of one or more protected characteristics. *See* Superseding Indictment ¶¶ 4, 6, 8, 10.

In anticipation of trial on these charges, Buchanan has designated Dr. Glen E. Johnson, M.D., as an expert witness in his defense. *See* Def.'s Designation, ECF No. 47-1, at 1–2. Dr. Johnson is a board-certified psychiatrist who has been working in private practice in Utah since 1978. *Id.* at 4. In a letter filed alongside Buchanan's expert disclosure statement, Dr. Johnson represents that he has been working with Buchanan since 2014. *Id.* at 6. *But see id.* (stating, as of March 2024, that Dr. Johnson had been working with Buchanan "for seven years"). Dr. Johnson also reports that Buchanan has been diagnosed with severe post-traumatic stress disorder and recurring panic disorder. *Id.* Buchanan is receiving ongoing treatment for these conditions, which Dr. Johnson says render him "functionally disabled." *Id.*

Buchanan proffers that, if allowed to testify at trial, Dr. Johnson would:

> explain that Mr. Buchanan's diagnoses of chronic post-traumatic stress disorder, as well as panic disorder with anger susceptibility to undefined stress and uncertainty, mean that Mr. Buchanan is prone to react reflexively and with poor impulse control. This means that, to a reasonable degree of medical and scientific probability, when he contacted the organization in question, he likely was unable to formulate the requisite specific intent to violate the statutes pursuant to which he is charged in the indictment.

*Id.* at 1–2. In the letter accompanying Buchanan's expert disclosure statement, Dr. Johnson also states that Buchanan "has never demonstrated any violence" or "following through with threats," and he "poses no risk to anyone." *Id.* at 6. Dr. Johnson also asserts that Buchanan's actions giving rise to this case were "secondary to his medical illness" and a response to "a scam call" that Buchanan had received that "trigger[ed] strong feeling regarding Palestinians." *Id.* Buchanan has not submitted an expert report from Dr. Johnson, and neither his expert disclosure notice nor the accompanying attachments clearly set out the bases and reasons for Dr. Johnson's opinions. *See id.* at 1–8.

Buchanan has also given notice that he intends to elicit lay opinion witness testimony from people who know him well, including members of his family, to the effect that "he is impulsive, quick to anger, with little self-control when he feels provoked" and that he "otherwise exhibits the symptoms observed by Dr. Johnson." *See* Def.'s Designation at 3.

The Government now seeks an order precluding Buchanan from introducing evidence or argument in support of a diminished capacity defense. *See* Gov't's Mot. at 1. Buchanan opposes the Government's request. *See* Def.'s Opp'n at 2.

## II. LEGAL STANDARDS

### A.    Opinion Testimony

Federal Rule of Evidence 702 allows opinion testimony from "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" if, among other conditions, the witness's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.   To be admissible, expert witness testimony must be relevant, reliable, and based in "scientific knowledge." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  The proponent of expert witness testimony bears the burden of establishing the witness's qualifications and the admissibility of the testimony. *United States v. McGill*, 815 F.3d 846, 903 (D.C. Cir. 2016).

A separate rule, Federal Rule of Evidence 701, allows a lay witness to testify in the form of an opinion if the opinion is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and not based on the kind of specialized knowledge that forms the basis of expert opinion testimony. Fed. R. Evid. 701.

### B.    The Insanity Defense Reform Act of 1984

Congress has, by statute, limited the admissibility of evidence of a defendant's mental state in criminal cases.  Under a provision of the Insanity Defense Reform Act of 1984 ("IDRA"), "[i]t

is an affirmative defense" to any federal prosecution that, at the time of the offense, the defendant was "was unable to appreciate the nature and quality or the wrongfulness of his acts" because of "a severe mental disease or defect," but "[m]ental disease or defect does not otherwise constitute a defense."  Pub. L. No. 98–473, Title II, § 402(a), 98 Stat. 1837, 2057 (codified, as later renumbered, at 18 U.S.C. § 17(a)).

Under IDRA, expert evidence regarding a defendant's mental state is admissible only if it is "adequately keyed to the issue of whether [the defendant] entertained the *mens rea* required for proof of the crime." *United States v. Davis*, 863 F.3d 894, 907 (D.C. Cir. 2017) (quoting *United States v. Childress*, 58 F.3d 693, 729 (D.C. Cir. 1995)).

Accordingly, courts evaluating such evidence must focus "on the proffered link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case." *Childress*, 58 F.3d at 730 (quoting *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)).  If the proffered evidence could "negate" the *mens rea* of the crime, then the evidence may be admissible.  *Id.* at 728 (quoting *United States v. Gold*, 661 F. Supp. 1127, 1131 (D.D.C. 1987) (JHG)).

However, under an amendment to the Federal Rules of Evidence that Congress adopted in a different provision of IDRA, an expert witness in a criminal case "must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b); *see* Pub. L. No. 98–473, Title II, § 406, 98 Stat. 1837, 2067.  Consistent with this rule, expert witness testimony about a defendant's mental state must be limited to "diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental disease or defect the experts believe the defendant possessed during the relevant time period." *Childress*, 58 F.3d at 728 (quoting *Gold*, 661 F. Supp.

at 1131).  An expert must refrain from "directly or indirectly opining on the [ultimate] issue of specific intent."  *Id.* (alteration in original) (quoting *Gold*, 661 F. Supp. at 1131).

### C.    Federal Rule of Evidence 403

Finally, to be admitted at trial, evidence must have probative value that is not "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Courts sometimes conclude in criminal cases that psychiatric expert witness testimony should be excluded on this basis, recognizing that such testimony has the potential to confuse the jury's assessment of the defendant's *mens rea*.  *See, e.g.*, *United States v. Davis*, 78 F. Supp. 3d 17, 21 (D.D.C. 2015) (RCL), *aff'd*, 863 F.3d 894 (D.C. Cir. 2017); *United States v. Rogers*, No. 05-cr-292, 2006 WL 5249745, at *7 (D.D.C. July 17, 2006); *United States v. Pohlot*, 827 F.2d 889, 890 (3d Cir. 1987).

### III. ANALYSIS

Buchanan's expert and lay opinion witness designation raises a variety of interlocking evidentiary issues.  The Court's analysis of these issues is complicated by the fact that Buchanan's witness designation is—as the Government aptly describes it—"thin on substance and cursory in form, but broad in potential application."  *See* Gov't's Reply at 1.  For the reasons that follow, some of Buchanan's proffered opinion testimony may be relevant in this case, but some of it is plainly inadmissible.  The Court shall require a revised Rule 16(b)(1)(C) disclosure statement and an evidentiary hearing before ruling on the admissibility of Buchanan's proffered expert witness testimony.  Finally, the Court shall defer a final ruling on the admissibility of the testimony described in Buchanan's opinion witness designation until the relevant issues arise at trial.

### A.    Relevance of Mental Condition Testimony

In light of IDRA, the evidence of Buchanan's mental condition that the Government challenges in the pending Motion is admissible only if there is an adequate link between that

evidence and the specific culpable mental state—the *mens rea*—that the Government must prove beyond a reasonable doubt to obtain a conviction in this case. *See Davis*, 863 F.3d at 907. The Court therefore begins by analyzing the *mens rea* element of the offenses charged.

The statute underlying the crimes charged in this case, 18 U.S.C. § 875(c), is silent about the *mens rea* that is necessary to complete the crime. *See Elonis v. United States*, 575 U.S. 723, 732 (2015). But in any criminal case arising from a statute that "makes criminal a form of pure speech," the Court must interpret the underlying statute "with the commands of the First Amendment clearly in mind." *Watts v. United States*, 394 U.S. 705, 707 (1969); *see also United States v. Syring*, 522 F. Supp. 2d 125, 129 (D.D.C. 2007) (CKK). Accordingly, courts have held that the statute at issue in this case "may only be constitutionally applied to speech insofar as [that speech] constitutes a true threat." *Syring*, 522 F. Supp. 2d at 129 (collecting cases). Recently, the Supreme Court further clarified that the Government "must prove in true-threats cases that the defendant had some understanding of his statements' threatening character." *Counterman v. Colorado*, 600 U.S. 66, 73 (2023). Proving that the defendant's speech was merely negligent is not sufficient. *See Elonis*, 575 U.S. at 737–41. Instead, in a true-threats case, the Government must prove at least that the defendant acted "recklessly," meaning that he "consciously disregard[ed] a substantial [and unjustifiable] risk that the conduct w[ould] cause harm to another." *Counterman*, 600 U.S. at 80 (second alteration in original) (quoting *Voisine v. United States*, 579 U.S. 686, 691 (2016)). And under the specific statute underlying the offenses charged in this case, "wrongdoing must be conscious to be criminal." *Elonis*, 575 U.S. at 740 (quoting *Morissette v. United States*, 342 U.S. 246, 252 (1952)).

Against that backdrop, some of Buchanan's proffered opinion testimony could be relevant and helpful to the jury's assessment of whether Buchanan had the requisite *mens rea* to commit

the crimes with which he is charged in this case. Buchanan proffers that Dr. Johnson would testify that Buchanan has severe post-traumatic stress disorder and panic disorder that cause him to "react reflexively and with poor impulse control." *See* Def.'s Designation at 1, 6. If the jury were to credit this testimony, it could conclude that there is a reasonable doubt about whether Buchanan was "conscious" of wrongdoing when he allegedly placed the phone calls for which he is charged under Section 875(c). *See Elonis*, 575 U.S. at 740. Because consciousness of wrongdoing is an element of the *mens rea* of the offense defined in Section 875(c), Buchanan's proffered expert witness testimony about his reflexive and impulsive reactions may be sufficiently "keyed to" the *mens rea* element to be relevant and helpful to the jury. *See id.*; *Davis*, 863 F.3d at 907.

Buchanan's proffered lay opinion evidence could be considered relevant for a similar reason: If the jury credits Buchanan's lay witnesses' testimony that he is "impulsive" and "quick to anger, with little self-control when he feels provoked," then it may conclude there is a reasonable doubt about whether Buchanan acted consciously when taking the alleged actions for which he is charged in this case. *See* Def.'s Designation at 2.

### B.    Scope of Dr. Johnson's Proffered Testimony

Although some of Buchanan's proffered testimony about his mental condition may be relevant, there are several issues with the scope of the testimony from Dr. Johnson described in Buchanan's witness disclosure statement that affect the admissibility of that testimony.

*First*, a core part of the proffered expert opinion testimony described in Buchanan's witness designation is plainly inadmissible: Dr. Johnson must not express an expert opinion to the jury about whether Buchanan was "unable to formulate the requisite specific intent to violate the statutes pursuant to which he is charged in the indictment." *See* Def.'s Designation at 1–2. Federal Rule of Evidence 704(b) directly precludes such testimony. *See* Fed. R. Evid. 704(b); *see also Diaz v. United States*, 602 U.S. 526, 534 (2024) (explaining that this rule proscribes "expert

opinions in a criminal case that are about a particular person ('the defendant') and a particular ultimate issue (whether the defendant has 'a mental state or condition' that is 'an element of the crime charged or of a defense')").   Buchanan appears to argue that there is a fine distinction between an opinion about whether he had the "capacity to form the requisite intent" and whether he in fact had "a mental state . . . that constitutes an element of the crime charged."  *Compare* Def.'s Opp'n at 4, *with* Fed. R. Evid. 704(b).   But any such distinction would be illusory and incompatible with the purpose of Rule 704(b).   If an expert opines that a specific person lacks the capacity to form a specific mental state, then the obvious implication to the jury is that the expert believes the person never in fact formed that mental state.   Rule 704(b) prohibits expert opinion testimony on that issue, stating that the ultimate issue of mental state in a criminal case is "for the trier of fact alone."   Fed R. Evid. 704(b).   Instead, expert opinion testimony about a criminal defendant's mental state must be limited to "diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental disease or defect the experts believe the defendant possessed during the relevant time period."  *Childress*, 58 F.3d at 728 (quoting *Gold*, 661 F. Supp. at 1131).   The Court shall therefore grant the Government's Motion in part and preclude Dr. Johnson from opining to the jury about the ultimate issue of whether Buchanan acted with the mental state necessary to commit the crimes charged.

*Second*, Buchanan's expert disclosure statement omits necessary details about the scope of and basis for any other expert opinions that Dr. Johnson might be prepared to offer.   The Federal Rules of Criminal Procedure require a "complete statement of all opinions that the defendant will elicit" from an expert witness in the Defendant's case-in-chief, accompanied by a statement of the "bases and reasons" for those opinions.   Fed. R. Crim. P. 16(b)(1)(C)(iii).   And the Federal Rules of Evidence require the Court to assess whether an expert's testimony "both rests on a reliable

foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; Fed. R. Evid. 702. Because a substantial portion of the opinion described in Buchanan's expert disclosure statement would be inadmissible under Rule 704(b), the Court needs more information about the details of any other expert opinions that Dr. Johnson intends to offer, as well as the bases for those opinions, before it will be able to rule on the reliability of Dr. Johnson's testimony. For example, it is unclear on the present record whether Dr. Johnson intends to testify—as he wrote in a letter that Buchanan attached to his expert disclosure statement—that Buchanan "poses no risk to anyone" or that his actions giving rise to this case were a response to "a scam call" that Buchanan had received that "trigger[ed] strong feeling regarding Palestinians." *See id.* at 6. It is also unclear what scientific basis Dr. Johnson would have for any such opinion. *See id.* On the present record, the Court doubts both the relevance of any such opinion testimony to the crimes charged in this case and the connection between any such testimony and Dr. Johnson's area of expertise. Assuming that Buchanan still intends to call Dr. Johnson as an expert, the Court will require him to file a revised Criminal Rule 16(b)(1)(C) disclosure statement addressing these issues. The Court will also set an evidentiary hearing to explore these issues further. At that hearing, the parties should be prepared to address both (a) Dr. Johnson's qualifications as an expert in general-practice psychiatry, and (b) the exact scope of and basis for any expert opinion testimony that Dr. Johnson intends to offer that would, consistent with this Memorandum Opinion, be admissible at trial.

*Third*, Buchanan's opinion witness designation suggests that he may be planning to call Dr. Johnson both as a lay witness and as an expert witness, but Buchanan fails to delineate which topics Dr. Johnson will address as a lay witness and which he will address as an expert. *See United States v. Smith*, 640 F.3d 358, 365 n.3 (D.C. Cir. 2011) (noting that a witness may testify both as a fact witness and as an expert); 3 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual*

§ 701.02[7] (13th ed. 2024) (explaining that treating physicians often testify in both roles).  The Court may allow Dr. Johnson to testify as a lay witness about facts relevant to this case that are within his personal knowledge, such as his own observations of Buchanan's symptoms during medical treatment.  *See* Fed. R. Evid. 602.  But if Buchanan calls Dr. Johnson to offer an expert opinion based on other previous professional experience, such as an opinion about the kinds of symptoms typically exhibited by people with post-traumatic stress disorder, the Court will hold any such testimony to the heightened reliability standards applicable to expert witness testimony.  *See Smith*, 640 F.3d at 365.; Fed. R. Evid. 702–03.  To aid in this analysis, the Court shall require Buchanan to clarify which topics Dr. Johnson would address as a lay witness based on his experience as Buchanan's treating physician and which topics he would address as an expert witness based on his broader professional experience.

## C.    Dr. Johnson's Qualifications as an Expert

Having reviewed the relevance and scope of Buchanan's proffered expert opinion testimony, the Court turns to the next necessary condition for its admissibility: reliability.  The Government argues that Dr. Johnson is not sufficiently reliable to be qualified as an expert in this case because he lacks experience in "forensic" psychiatry.  Gov't's Mot. at 10.  But it appears from the present record that Dr. Johnson may be eligible for qualification as an expert in a different area—general-practice psychiatry—based on his decades of practice and board certification in that field.  *See* Def.'s Designation at 3; Fed. R. Evid. 702.  Once properly qualified as an expert in that field, Dr. Johnson may be able—consistent with the "level of intellectual rigor that characterizes the practice of an expert in the relevant field"—to testify about his clinical observations of Buchanan, whether those observations fit a particular psychiatric diagnosis, and what symptoms tend to be associated with that diagnosis.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Provided that Dr. Johnson's testimony hews closely to his expertise as a general-practice

11

psychiatrist, the present record suggests that such testimony may be sufficiently reliable to allow its admission at trial.  However, the Court shall defer final ruling on the reliability and admissibility of this testimony until after the forthcoming evidentiary hearing.

### D.    Admissibility of Other Lay Witness Opinion Testimony

The Government next suggests that Buchanan's other proffered witnesses' lay opinion testimony should be excluded because that testimony would necessarily contain inadmissible hearsay, but the Court disagrees.  *See* Gov't's Mot. at 13–14.  Buchanan proffers that these lay opinion witnesses, including some of his family members, would testify that he is "impulsive, quick to anger, with little self-control when he feels provoked" and that he exhibits other related "symptoms."  Def.'s Designation at 2.  Like all lay witness testimony, each of these witnesses' testimony is admissible only if it is "rationally based on the witness's perception."  Fed. R. Evid. 701(a).  Therefore, these witnesses' opinion testimony will not and cannot be a conduit for hearsay, either from Dr. Johnson or any other source.  Therefore, on the present record, the Court declines to exclude Buchanan's proffered lay witness opinion testimony on hearsay grounds.  However, to maintain "reasonable control" over the presentation of lay opinion witnesses' testimony and ensure that any opinion has a rational basis, the Court shall order that each lay opinion witness must testify to the observations and perceptions that support the witness's opinion before stating that opinion in the presence of the jury.  *See* Fed. R. Evid. 611(a); 3 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 701.02[5] (13th ed. 2024).

### E.    Admissibility Under Rule 403

Finally, the Court shall hold the Government's Motion in abeyance to the extent that it seeks a final ruling on whether Buchanan's proffered expert and lay witness opinion testimony should be excluded because its probative value is substantially outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting

cumulative evidence." *See* Fed. R. Evid. 403; Gov't's Mot. at 12–14; *see also* Gov't's Mot. at 14 (arguing that the relevant evidence should be excluded because it could be used in support of an improper invitation to jury nullification); Gov't's Reply at 7–8 (same). Because both the probative value of this evidence and the many Rule 403 considerations that may weigh against its admission are best evaluated in the context of the parties' presentations at trial, the Court shall defer final ruling on the admissibility of the evidence at issue in the Government's Motion until the relevant issues arise at trial. The parties' presentations at the forthcoming evidentiary hearing will also inform the Court's analysis of the probative value of Buchanan's proffered testimony relative to any potential risk of prejudice or confusion that may arise from that testimony.

## IV. CONCLUSION

For the foregoing reasons, the Government's [47] Motion *in Limine* shall be **GRANTED IN PART**, **DENIED IN PART**, and **HELD IN ABEYANCE IN PART**, as follows:

(1) Buchanan shall file a revised Rule 16(b)(1)(C) expert disclosure on or before **April 25, 2025**, containing "a complete statement" of all expert opinions that Buchanan intends to elicit from Dr. Johnson, consistent with the holdings of this Memorandum Opinion, along with "the bases and reasons" for those opinions. *See* Fed. R. Crim. P. 16(b)(1)(C)(iii). This disclosure shall state whether Dr. Johnson intends to express an opinion about whether Buchanan presents a danger to others. This disclosure shall also clarify which topics Dr. Johnson intends to address as a lay witness based on his experience as Buchanan's treating physician and which topics he intends to address as an expert witness based on his broader professional experience.

(2) The parties shall appear for a pretrial evidentiary hearing, to be scheduled by further order, to (a) establish Dr. Johnson's qualifications as an expert in general-practice psychiatry and (b) determine the exact scope of and basis for any expert opinion testimony that Dr. Johnson intends to offer that would, consistent with this Memorandum Opinion, be admissible at trial.

(3) If the Court allows Dr. Johnson to testify as an expert at trial, he must not state an opinion to the jury about whether Buchanan did or did not have a mental state that

constitutes an element of the crimes charged, including an opinion about whether he was capable of forming that mental state.

(4) If the Court allows Dr. Johnson to testify at trial and qualifies him as an expert in general-practice psychiatry, Dr. Johnson may testify as an expert only about medical diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental disease or defect that he believes Buchanan was experiencing at the relevant times.

(5) Buchanan may introduce lay opinion witness testimony that is relevant to whether Buchanan was conscious of wrongdoing at the time of the alleged acts for which he is charged in this case, provided that such testimony is rationally based on each witness's own perception. Each lay opinion witness must testify to the observations and perceptions that support the witness's opinion before stating that opinion in the presence of the jury.

(6) The Court shall defer final ruling on the admissibility under Federal Rule of Evidence 403 of the evidence at issue in the Government's Motion until the relevant issues arise at the forthcoming evidentiary hearing or at trial.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** April 14, 2025

COLLEEN KOLLAR-KOTELLY
United States District Judge