**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 24-256 (CKK) |
| KEVIN BRENT BUCHANAN, | |
| Defendant. | |

**MEMORANDUM OPINION**
(May 13, 2025)

A grand jury has charged Kevin Brent Buchanan by indictment with three counts of making threatening interstate communications, in violation of 18 U.S.C. § 875(c). *See* Superseding Indictment, ECF No. 25. Buchanan's case is set for trial beginning in July 2025. *See* Am. Pretrial Scheduling Order, ECF No. 40. Now pending before the Court is the Government's [51] Omnibus Motion *in Limine* requesting an order precluding Buchanan from presenting several types of arguments and evidence at trial ("Motion" or "Gov't's Mot."). Buchanan opposes the Motion in part. *See* Def.'s Opp'n to the Gov't's Mot. *in Limine* ("Def.'s Opp'n"), ECF No. 56. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **GRANT IN PART** and **DENY IN PART** the Government's Motion. Specifically, the Court shall **DENY** the Government's request for an order categorically precluding argument or evidence in support of a voluntary intoxication defense, **GRANT** the Government's request for an order precluding argument and evidence about whether Buchanan intended to carry out his

---

[1] The Court's consideration has focused on the following documents:

- The Superseding Indictment, ECF No. 25;
- The Government's Omnibus Motion *in Limine* ("Gov't's Mot."), ECF No. 51;
- Buchanan's Opposition to the Government's Motion ("Def.'s Opp'n"), ECF No. 49; and
- The Government's Reply in Support of its Motion ("Gov't's Reply"), ECF No. 58.

1

alleged threats, and **DEFER RULING ON** the Government's request for a prophylactic order barring the presentation of evidence about Buchanan's character, Buchanan's own out-of-court statements, and argument or evidence that may tend to encourage jury nullification. The Court shall request a further submission from Buchanan to help resolve the remaining issues before trial.

## I. BACKGROUND

The Government alleges that, over the course of three days beginning in late October 2023, Buchanan left five threatening voicemails for an organization—known in this case as "Organization 1"—that is headquartered in this District. *See* Gov't's' Mot., ECF No. 47, at 1–2; Superseding Indictment, ECF No. 25. The Government alleges that Buchanan recorded these voicemails from Utah. *See* Superseding Indictment ¶¶ 4, 6, 8. It further alleges that Buchanan selected Organization 1 as the object of his threatening messages based on "race, color, religion, national origin, and ethnicity." *Id.* ¶ 10.

For this alleged conduct, a grand jury charged Buchanan by superseding indictment with three counts of making threatening interstate communications, in violation of 18 U.S.C. § 875(c), enhanced by a special finding that Buchanan selected the "object of the offense[s]" because of one or more protected characteristics. *See* Superseding Indictment ¶¶ 4, 6, 8, 10. The grand jury specifically charged that Buchanan "intended to convey a threat" when he recorded these voicemails and that he "intentionally selected" the recipient of his threats because of protected characteristics. *Id.*

In anticipation of trial on these charges, the Government has filed an Omnibus Motion *in Limine* seeking to preclude several categories of evidence and argument that it contends would be improper in this case. *See* Gov't's Mot. at 1. Buchanan opposes the Government's Motion in part. *See* Def.'s Opp'n at 2–6. The Government's Motion is now ripe for decision.

## II. LEGAL STANDARD

District courts may grant motions *in limine* to "narrow the evidentiary issues for trial" and "eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011) (CKK) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings," district courts may entertain and grant such motions to decide evidentiary issues pursuant to their "inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 (1984) (citing Fed R. Evid. 103(c); Fed. R. Crim. P. 12(e)).

When deciding motions *in limine*, like other evidentiary motions, this Court must assess the relevance of the proffered evidence and weigh its probative value against any factors that counsel against admissibility. Fed. R. Evid. 401–03. Evidence is relevant if it tends to make any fact that "is of consequence to determining the action" more or less probable than it would be without the evidence. Fed. R. Evid. 401. "Relevant evidence is admissible" unless a rule, statute, constitutional provision provides otherwise. Fed. R. Evid. 402. However, the Court may exclude relevant evidence if its probative value is "substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

District courts are afforded "a wide discretion" when applying these standards to decide whether to admit evidence. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). That discretion "extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial." *Graves*, 850 F. Supp. 2d at 11. Accordingly, the Court has discretion "to await developments at trial before ruling" on an evidentiary issue raised in a motion *in limine*, rather than granting the motion before trial. *Id.* (quoting Stephen A. Saltzburg et al., Federal Rules

of Evidence Manual § 103.02[13] (9th ed. 2006)). The Court's rulings on motions *in limine* are based on the present record and are subject to revision as the record develops.

### III. ANALYSIS

The Government's Omnibus Motion *in Limine* requests pretrial rulings on the admissibility of evidence related to five topics: (1) a potential voluntary intoxication defense, (2) whether Buchanan intended to carry out his alleged threats, (3) Buchanan's character, (4) Buchanan's own out-of-court statements, and (5) matters that may tend to encourage jury nullification. *See* Gov't's Mot. at 1.

In this Memorandum Opinion, the Court resolves two of the important evidentiary issues underlying the Government's Motion. The Court defers ruling on the remaining issues in the Government's Motion because the present record lacks sufficient detail to allow the Court to determine whether some evidence related to the topics the Government identifies may be relevant and admissible.

For several of the issues not resolved in this Memorandum Opinion, Buchanan's response to the Government's Motion amounts to a promise to follow the relevant Rules of Evidence. The Court has no doubt that all counsel in this case know the Rules and will adhere to them. However, given the complexity of some of the evidentiary issues in this case, it may be helpful to the parties for the Court to resolve several of the remaining evidentiary issues before trial. Accordingly, the Court shall request a further submission from Buchanan in which he may identify specific evidence that he contends should be admitted at trial if he elects to put on a defense case. With a further submission from Buchanan, the Court can make additional evidentiary rulings before trial.

**A.    Issues Resolved on the Present Record**

The Court begins by resolving two legal issues raised in the Government's Motion that can be settled on the present record, without any need for further factual development: (1) the

availability of a voluntary-intoxication defense and (2) the admissibility of evidence regarding whether Buchanan intended to carry out his alleged threats.

> 1. <u>Because transmitting threats in violation of Section 875(c) is a specific-intent crime, a voluntary intoxication defense may be available at trial.</u>

The Government first requests an order precluding Buchanan from presenting any evidence or argument in support of a voluntary intoxication defense. Gov't's Mot. at 4–7. Buchanan opposes this request. Def.'s Opp'n at 2–4.

Relying on the common-law principle that voluntary intoxication is not a defense to prosecution for a "general-intent" crime, both parties' arguments focus on whether making an interstate threat in violation of 18 U.S.C. § 875(c) is a "general-intent" crime or a "specific-intent" crime. *See* Gov't's Mot. at 4–7; Def.'s Opp'n at 2–4; *see also Proctor v. United States*, 177 F.2d 656, 657 (D.C. Cir. 1949) (per curiam) (describing common-law principle). The Government argues that a conviction under Section 875(c) requires only "general" intent, making a voluntary intoxication defense categorically unavailable in this case. *See* Gov't's Mot. at 4–7.

Unfortunately, the distinction between "general" and "specific" intent is often elusive. Both the Supreme Court and the U.S. Court of Appeals for the D.C. Circuit have acknowledged that these terms can be ambiguous, especially when applied to crimes with multiple elements. *See United States v. Bailey*, 444 U.S. 394, 405–06 (1980); *Parker v. United States*, 359 F.2d 1009, 1012 (D.C. Cir. 1966). The Supreme Court has even encouraged courts to avoid referring to "difficult legal concepts like 'specific intent' and 'general intent'" when instructing juries, preferring "more useful" instructions that describe required mental states with greater specificity. *Liparota v. United States*, 471 U.S. 419, 434 n.16 (1985).

To illustrate the traditional distinction between "general" and "specific" intent, the Supreme Court has used the example of a person who entered a bank and took money from a teller

5

at gunpoint in the hope that he would be arrested and returned to prison, where he would receive treatment for alcoholism.  *See Carter v. United States*, 530 U.S. 255, 268 (2000) (citing *United States v. Lewis*, 628 F.2d 1276, 1279 (10th Cir. 1980), *cert. denied*, 450 U.S. 924 (1981)).  The Court explained that this person had "general" intent because he knowingly committed the unlawful acts that make up the offense of robbery, but he lacked the "specific" intent to commit a robbery because "he did not intend permanently to deprive the bank of its possession of the money." *Id.*  Put differently, the man had "general" intent because he knowingly completed the *actus reus*, but he lacked "specific" intent because he did not have a specific *mens rea* that the law requires beyond the knowing commission of the relevant unlawful acts.  *See id.*

The Government argues that communicating interstate threats in violation of 18 U.S.C. § 875(c) is a general-intent crime for which voluntary intoxication is not a defense because—according to the Government's theory—the crime can be committed with a *mens rea* of "recklessness" or "knowledge," rather than "purpose," with respect to the threatening nature of the communication.  *See* Gov't's Mot. at 5–6 & n.3 (citing *Counterman v. Colorado*, 600 U.S. 66, 79 (2023)).  In support of this argument, the Government cites authority explaining that a *mens rea* of "'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent." *Id.* at 5 (quoting *United States v. Bailey*, 444 U.S. 394, 405 (1980)).  The Government also cites authority holding that a specific-intent crime traditionally requires some "bad purpose," while a general-intent crime requires only "knowing commission of an act that the law makes a crime." *Id.* (quoting *United States v. Kleinbart*, 27 F.3d 586, 592 n.4 (D.C. Cir. 1994)).

This argument misses the mark.  The Government's theory focuses on the Supreme Court's holding in *Counterman v. Colorado* that a person may be criminally responsible for a "true threat"

if the person "recklessly" communicates a statement with the subjective awareness that others could reasonably regard the statement as a threat. *See* Gov't's Mot. at 5–6; *Counterman*, 600 U.S. at 79. But the holding of *Counterman* does not mean that true-threat offenses like the one defined in Section 875(c) are general-intent crimes. *See* 600 U.S. at 79. As the Government acknowledges, the common-law concepts of "specific" and "general" intent correspond only "loosely" to modern *mens rea* standards like "purpose," "knowledge," and "recklessness." *See* Gov't's Mot. at 5 (quoting *Bailey*, 444 U.S. at 405). According to the prevailing understanding of the common-law categories of "specific" and "general" intent, the defining feature of a specific-intent crime is "a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." 1 Wayne R. LaFave, Substantive Criminal Law § 5.2(e) (3d ed. 2024). That additional mental element could be a wrongful *purpose*, but it could also be something less culpable. As the D.C. Circuit has explained, a person may be said to have acted with specific intent if "he knew he was acting wrongly or violating the law in general when he acted." *United States v. Haldeman*, 559 F.2d 31, 114 n.226 (D.C. Cir. 1976).

Understood in that context, the mental state that is required to violate Section 875(c) is a form of specific intent, not general intent. Before the Supreme Court's decision in *Elonis v. United States*, 575 U.S. 723 (2015), several circuit courts of appeals had reached contrary conclusions and held that a violation of Section 875(c) requires only the general intent to communicate a message that a reasonable person would find threatening.[2] The *Elonis* decision abrogated those holdings by tethering liability under Section 875(c) to the defendant's own, subjective understanding that

---

[2] *See, e.g.*, *United States v. Whiffen*, 121 F.3d 18, 20 (1st Cir. 1997); *United States v. Francis*, 164 F.3d 120, 122–23 (2d Cir. 1999); *United States v. Darby*, 37 F.3d 1059, 1063 (4th Cir. 1994); *United States v. Myers*, 104 F.3d 76, 81 (5th Cir. 1997); *United States v. DeAndino*, 958 F.2d 146, 150 (6th Cir. 1992); *United States v. Stewart*, 411 F.3d 825, 828 (7th Cir. 2005); *United States v. Mabie*, 663 F.3d 322, 332–33 (8th Cir. 2011); *United States v. Alaboud*, 347 F.3d 1293, 1296–97 (11th Cir. 2003). *But see United States v. Twine*, 853 F.2d 676, 680 (9th Cir. 1988) (concluding that proving a violation of Section 875(c) requires proving specific intent).

7

his communication could reasonably be regarded as a threat.  *See* 575 U.S. at 737–38.  After *Elonis*, it is not enough that the defendant knowingly or recklessly commits the *actus reus* by communicating a message that a reasonable person would interpret as a threat.  *See id.*  Instead, because "'the crucial element separating legal innocence from wrongful conduct'" under Section 875(c) "is the threatening nature of the communication," the Government must present evidence of the defendant's awareness of "the fact that the communication contains a threat."  *Id.* at 737 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994)).  The Government can carry this burden by, for example, showing that the defendant sent a communication "for the purpose of issuing a threat, or with knowledge that the communication [would] be viewed as a threat."  *Id.* at 740.  This requirement is a "special mental element" that is "above and beyond" the mental state required regarding the *actus reus*.  *See* LaFave, *supra*, § 5.2(e).  The presence of such a requirement makes the offense defined in Section 875(c) a specific-intent crime, not a general-intent crime.  *See id.*; *see also Elonis*, 575 U.S. at 750 (Thomas, J., dissenting) (noting that the Court's decision in *Elonis* means that "a requirement of [only] general intent will not do" to establish liability under Section 875(c)).

Because the offenses under Section 875(c) that the Government has charged in this case are specific-intent offenses, the Court declines to rule that a voluntary intoxication defense is unavailable.  The Government's request for an order precluding Buchanan from presenting any evidence or argument in support of a voluntary intoxication defense shall therefore be **DENIED**.  However, the admissibility of any specific evidence of intoxication will depend on the factual record of Buchanan's intoxication at the time of the alleged threats.  *See infra*, Section III.B.1.

> 2. The Court shall not admit evidence regarding whether Buchanan intended to carry out his alleged threats.

The Government also requests an order precluding Buchanan from presenting argument or evidence about whether he intended to carry out his alleged threats, which it argues is irrelevant to his guilt or innocence. Gov't's Mot. at 7–8. Buchanan argues that whether he intended to carry out the alleged threats "may be relevant" because, "depending on the underlying circumstances," intent to carry out the threat may be probative of whether he had the *mens rea* necessary to commit the charged offenses. Def.'s Opp'n at 4–6.

Before the Supreme Court's decision in *Elonis*, this Court concluded that whether a defendant intended to carry out a threat is "entirely irrelevant" to the defendant's guilt or innocence of an interstate-threats charge under 18 U.S.C. § 875(c). *United States v. Syring*, 522 F. Supp. 2d 125, 129 n.5 (D.D.C. 2007) (CKK). That conclusion finds support in the Supreme Court's earlier decision in *Virginia v. Black*, 538 U.S. 343 (2003), which explained that a speaker "need not actually intend to carry out the threat" for a statement to be a "true threat" that lies outside the protections of the First Amendment. *Id.* at 359–60.

There is a colorable argument that the Supreme Court's holding in *Elonis* alters this analysis. *See* 575 U.S. at 737–38. The Supreme Court held in *Elonis* that a defendant's subjective understanding of his statements is an element of the offense defined in Section 875(c), and a defendant's intent to carry out a threat could, in theory, be relevant to a jury's assessment of that understanding. *See id.*

However, the probative value of evidence of intent to carry out the threats in this case would be substantially outweighed by the risk of confusing the issues before the jury. *See* Fed. R. Evid. 403. The probative value of any such evidence—if any—would be minimal. Meanwhile, the risk of confusing the issues would be substantial. The mental-state issues in this case are

9

already complex.  Allowing argument and evidence about a kind of intent that is *not* required for conviction as indirect evidence of another kind of intent that *is* required would further complicate those issues for the jury.  The Court shall therefore **GRANT** the Government's motion in part and preclude Buchanan from introducing argument or evidence about whether he intended to carry out his alleged threats.

      **B.**      **Issues Not Resolved on the Present Record**

The Court next turns to four issues raised in the Government's Motion that cannot be fully resolved on the present record: the admissibility of (1) specific evidence of intoxication, (2) evidence of Buchanan's character, (3) evidence of Buchanan's own out-of-court statements, and (4) evidence that the Government contends may tend to encourage jury nullification.  The admissibility of evidence in each of these categories cannot be resolved without more information about the type of evidence that Buchanan intends to offer or is contemplating offering and the purpose for which it would be offered.  The Court shall request a further submission from Buchanan in which he should provide the Court with more information about specific evidence he intends to offer or is considering offering that falls into one or more of these categories.  The Court can then rule on the admissibility of that evidence before trial.

           1.      <u>Admissibility of specific evidence of intoxication</u>

The Court has concluded that the offenses charged in this case are specific-intent crimes for which a voluntary intoxication defense is available.  *See supra* Section III.A.1.  However, the Court's holdings do not necessarily mean that evidence of voluntary intoxication will be admitted at trial.  To be relevant and admissible in this case, evidence of intoxication must be such that a reasonable jury could conclude that Buchanan was so intoxicated that he acted without the specific mental state that is required to violate Section 875(c).  *See, e.g.*, *State v. Dagnon*, 31 Wash. App. 2d 1043, 2024 WL 3043271, at *4–5 (2024) (applying *Counterman* and concluding that a

10

voluntary intoxication defense to true-threats prosecution should have been allowed where evidence showed that the defendant "was intoxicated enough to urinate on himself" at the time that he made the alleged threats). If the evidence would support only a finding of some lesser level of intoxication, the Court may exclude that evidence because it would be minimally probative and would present a substantial risk of confusing the issues before the jury. *See* Fed. R. Evid. 403.

Accordingly, the Court shall defer ruling on the admissibility of any specific evidence of voluntary intoxication. Before any such evidence will be admitted, Buchanan must proffer—outside the presence of the jury—evidence from which a reasonable jury could conclude that he was so intoxicated at the time of making the alleged threats that he acted without the specific mental state that is required to violate Section 875(c). Buchanan should seek a pretrial ruling on the admissibility of any evidence of intoxication by filing a notice on or before **June 6, 2025**, advising the Court of any specific evidence of intoxication that he intends to offer.

### 2. Admissibility of evidence of Buchanan's character

The Government next requests a prophylactic order precluding Buchanan from introducing inadmissible character evidence, such as reputation or opinion evidence of positive character traits that are not pertinent to the offenses charged. *See* Gov't's Mot. at 8–10 (citing Fed. R. Evid. 404–05). As Buchanan correctly notes, the Government's request simply calls for the Court to enforce the Federal Rules of Evidence regarding character evidence. Def.'s Opp'n at 5. Because Buchanan affirms that he will comply with those rules, *see id.*, a ruling *in limine* that merely restates the relevant rules would not "narrow the evidentiary issues for trial" and would be of little practical use to the parties. *See Graves*, 850 F. Supp. 2d at 10. The Court shall therefore defer ruling on the admissibility of character evidence. Buchanan should seek a pretrial ruling on the admissibility of specific forms of character evidence by filing a notice on or before **June 6, 2025**, advising the

11

Court of the type of evidence he proposes to admit, the character trait he argues the evidence would illuminate, and the purpose for which he contends the evidence is admissible.

        3.        <u>Admissibility of Buchanan's own out-of-court statements</u>

The Government also requests an order precluding Buchanan from "elicit[ing], suggest[ing], or "referenc[ing]" his own self-serving, out-of-court statements during *voir dire*, opening and closing statements, or witness testimony "without subjecting himself to the truth-seeking function of cross-examination." Gov't's Mot. at 11–12. Buchanan responds that he "will not seek to elicit impermissible self-serving hearsay statements." Def.'s Opp'n at 5.

Because a defendant's own out-of-court statements are not excluded from the definition of hearsay, those statements are inadmissible as evidence of the truth of the matter asserted unless an exception applies. *See* Fed. R. Evid. 801(a), 802; *cf.* Fed. R. Evid. 801(d)(2) (excluding an opposing party's own out-of-court statement from the definition of hearsay only if the statement is "offered against" that party).

Several exceptions to the rule excluding hearsay may allow a defendant to introduce a self-serving statement without taking the stand in his own defense. For example, the rule of completeness may allow a defendant to introduce a statement that would otherwise be hearsay to provide context for a related statement introduced by the Government if "fairness" requires that both statements "be considered at the same time." *See* Fed. R. Evid. 106. A defendant may also seek to admit his own out-of-court statement as a present-sense impression, an excited utterance, a statement of his then-existing state of mind, or any other kind of statement that is admissible as an exception to the rule excluding hearsay. *See* Fed. R. Evid. 803–04.

Neither party has yet identified any specific out-of-court statement that Buchanan may seek to admit. *See* Gov't's Mot. at 12; Def.'s Opp'n at 5. Buchanan also avers that he will not seek to admit any "impermissible" statements. Def.'s Opp'n at 5. Accordingly, the Court cannot yet

evaluate whether any statement that Buchanan may offer would be admissible under relevant exceptions to the rule excluding hearsay.  The Court shall therefore defer ruling on the Government's motion *in limine* to the extent that it seeks a ruling on the admissibility of those as-yet unspecified statements.  Buchanan should seek a pretrial ruling on the admissibility of specific out-of-court statements by filing a notice on or before **June 6, 2025**, advising the Court of the content of any statement he may seek to admit and the purpose for which it would be admitted.

    4.    <u>Admissibility of evidence that the Government contends may tend to encourage jury nullification</u>

Finally, the Government seeks an order precluding Buchanan from presenting any argument or evidence that is "geared towards encouraging jury nullification." Gov't's Mot. at 12. The Government identifies several topics that it argues fall into this category, including "[Buchanan's] wife's poor health, his substance abuse, his mental health issues, his prior military service, and video footage of his arrest in the presence of his infirm wife." *Id.*

Evidence and argument that would serve no purpose other than to encourage nullification is not relevant to any issue properly before the jury. *See Sparf v. United States*, 156 U.S. 51, 102 (1895); *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983).  Buchann agrees that such evidence is inadmissible. *See* Def.'s Opp'n at 6; Fed. R. Evid. 401.  He also does not appear to dispute that the video recording showing his arrest in his wife's presence would not be relevant or admissible at trial. *See* Def.'s Opp'n at 5–6.

However, as Buchanan correctly notes, some of the evidence that the Government seeks to exclude as irrelevant jury-nullification evidence may also be relevant for another purpose. *See* Def.'s Opp'n at 5–6.  For example, evidence of Buchanan's mental condition or history of substance abuse may be relevant to the issue of whether he had the mental state required to violate

13

Section 875(c) when he allegedly placed the calls that are at issue in this case. *See supra* Section III.A.1; *see also* Mem. Op., ECF No. 53, at 6–8.

Because the probative value of evidence on these topics and its relative potential for unfair prejudice will be best assessed in context of the parties' presentations at trial, the Court may defer ruling on the admissibility of evidence on these topics until trial. *See* Fed. R. Evid. 403. However, Buchanan should seek a pretrial ruling on the admissibility of any specific evidence related to the issues that the Government challenges as potential jury-nullification evidence by filing a notice on or before **June 6, 2025**, advising the Court of the content of any evidence on those topics that he intends to offer and the purpose for which he contends that evidence is admissible.

*    *    *

## IV. CONCLUSION

For the foregoing reasons, the Government's [51] Omnibus Motion *in Limine* shall be **GRANTED IN PART** and **DENIED IN PART**, as follows:

(1) The Government's request for an order categorically precluding argument or evidence in support of a voluntary intoxication defense shall be **DENIED**.

(2) The Government's request for an order precluding argument and evidence about whether Buchanan intended to carry out his alleged threats shall be **GRANTED**.

(3) The Court shall **DEFER RULING** on the following issues:

   a. The admissibility of any specific evidence of voluntary intoxication.

   b. The admissibility of evidence of Buchanan's character.

   c. The admissibility of Buchanan's own out-of-court statements.

   d. The admissibility of evidence that the Government argues may tend to encourage jury nullification.

(4) Buchanan should seek a pretrial ruling on the admissibility of specific evidence related to the issues on which the Court has deferred ruling by filing a notice, on or before **June 6, 2025**, identifying any evidence in the categories at issue that he intends to offer or is considering offering and addressing the specific topics described in this Memorandum Opinion.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** May 13, 2025

COLLEEN KOLLAR-KOTELLY
United States District Judge