UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No.: 1:24-cr-00256-CKK |
| | : UNDER SEAL |
| KEVIN BUCHANAN, | : |
| | : |
| Defendant. | : |

DEFENDANT'S MEMORANDUM IN AID OF
SENTENCING, AND MOTION FOR DOWNWARD VARIANCE

Defendant Kevin Buchanan, through counsel, respectfully submits this memorandum in aid of sentencing. Further, we respectfully move for a downward variance. We respectfully submit that a probationary sentence, or one of home confinement, would be a just result in this case, and that a custodial sentence should not be imposed.

Introduction

As the government correctly notes in its memorandum in aid of sentencing, Mr. Buchanan has fully acknowledged his guilt of the serious offenses at issue in this case. Nonetheless, a non-custodial sentence is appropriate, under 18 U.S.C. §3553(a), for at least the following reasons:

- This Court heard extensive sworn testimony from Mr. Buchanan's highly experienced treating psychiatrist, Glen Johnson, M.D. Dr. Johnson opined that the conduct at issue was instigated by Mr. Buchanan's longstanding post-traumatic stress disorder ("PTSD"), *which he developed as a result of his service to the United States* in the Utah National Guard.[1] Dr. Johnson explained in detail the reasons for his conclusion, which is unrebutted in this case. There is nothing in the Presentence Report ("PSR") casting doubt

---

[1] The transcript of Dr. Johnson's testimony is appended here as Exhibit 1.

upon this conclusion. In fact, the PSR *expressly acknowledges* that Mr. Buchanan's mental health disorder may be a basis for a variance, along with his age. PSR ¶ 123.

- The government expressly has stated that it does not assert that Mr. Buchanan intended to carry through on the threats at issue. PSR ¶ 33. Further, it has agreed to "cap" its allocution at the low end of the Guidelines range to which the parties have agreed.
- The PSR correctly notes that Mr. Buchanan was the caregiver, for extensive periods of time, for both his mother and his late wife. His wife recently perished after a long fight against colon cancer, during which she, and Mr. Buchanan, had to address her own serious mental health disorder.

<u>Sentencing Guidelines and Section 3553(a)</u>

Mr. Buchanan pleaded guilty to one count of Transmittal of Threats in Interstate Commerce in violation of 18 USC § 875(c). He accepts full responsibility for the conduct that led to his appearance before this Court for sentencing. However, Mr. Buchanan is not defined by the choices that led to his appearance before this Court for sentencing. This memorandum is not intended to excuse or minimize his actions, but, rather, to present to the Court a full picture of Mr. Buchanan, pursuant to §3553(a).

The highly diligent Probation Officer who authored the PSR correctly notes that a Guidelines-related disagreement exists between the Department of Probation, on the one hand, and both parties, on the other, concerning a two-point enhancement under USSG § 2A6.1(b)(2)(A). *See,* PSR ¶¶ 41, 103 and at p. 27. Our submission is that the Court should adopt the Sentencing Guidelines calculation presented in the plea agreement, to which Mr. Buchanan agreed before this Court in the hearing required by Fed. R. Crim. P. 11. The government has not sought the two-point enhancement at issue. Thus a predicate does not exist

for the Court to make a factual finding concerning its applicability.  A factual finding would be required to implement it, and a finding that the requisite factual predicate is supported by a preponderance of evidence.  Hence the applicable Guidelines calculation, as reflected in the plea documents, is a total offense level of 13.  The corresponding sentencing range is 12 to 18 months.

Further, as the PSR notes, the government takes no position concerning affording Mr. Buchanan a third point for acceptance of responsibility.  *See* PSR at 10 n.4 and at page 127.  We are unsure if we are permitted, under the plea agreement, to argue expressly for this third point.  Thus, we limit ourselves to noting that Mr. Buchanan entered his plea of guilty well before trial, conserving the resources of the government and the Court.

Finally, we note that Mr. Buchanan will receive a victim-related upward adjustment of three points pursuant to USSG § 3A1.1(a).  We have agreed to the application of this enhancement.  Certainly, the conduct at issue related to the victim entity's affiliation with the national aspirations of the Palestinian people.  We note, however, that the content of the threats suggest a motive for them that is at least partly political, as opposed to being predicated on bigotry towards Palestinians because of their national origin.

The Court is required to consider the Federal Sentencing Guidelines in imposing a sentence, but the Supreme Court's holding in *United States v. Booker,* 543 U.S. 220 (2005) prescribes that the Guidelines are "merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other § 3553(a) factors." *United States v. Reinhart*, 442 F.3d 857, 864 (5th Cir. 2006) (citing *Booker*, 543 U.S. at 245–246).  The Guidelines are "but one of eight factors the sentencing judge must consider." *United States v. Ovid*, No. 09-CR-216 (JG), 2010 U.S. Dist. LEXIS 105390, at *5 (E.D.N.Y. Oct. 1, 2010).

The factors enumerated in 18 U.S.C. § 3553(a) direct the Court to consider the full history and character of the defendant. Focus on the § 3553 factors "produces sentences that are moored to fairness, and to the goals of sentencing set forth in § 3553(a)(2), but sometimes not so much to the advisory Guidelines range." *Id.* at *4-5. 18 U.S.C. § 3553 requires a "sentence sufficient, but not greater than necessary" when the following factors are considered:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553 (2022). In considering these factors, 18 U.S.C. § 3661 states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661 (2022).

<u>History and Characteristics of Mr. Buchanan</u>

<u>Military</u>

As the PSR observes, Mr. Buchanan served this country, in its military, for a substantial portion of his life. This factor, we submit, should receive substantial weight, particularly in light of Dr. Johnson's unrebutted opinion that Mr. Buchanan developed PTSD, which was substantially related to the underlying conduct in the manner Dr. Johnson explained, during his military service as a tank commander. *See, e.g.,* PSR at ¶¶ 63, 88 (describing how Mr. Buchanan witnessed tank and jeep accidents leading to multiple deaths). This factor alone, we submit,

takes this case well outside the heartland of federal threats cases, warranting a non-custodial sentence.

### Caregiving

Dr. Johnson also explained the extreme stress Mr. Buchanan experienced as a result of his beloved wife's long illness, which, ultimately, ended her life. This too, we submit, provides a substantial basis for a downward variance. Further, it says something significant about Mr. Buchanan that he devoted himself, so selflessly, for such an extended period of years, to the care of both his mother and his wife, helping each of them to cope with life-ending illnesses. See PSR at ¶¶ 57, 59, 60.

### Gang or Extremist Affiliations

As the PSR notes, Mr. Buchanan has no gang or extremist affiliations. ¶ 65.

### Mental Health

Mr. Buchanan was referred to Dr. Johnson by a previous psychiatrist. That previous psychiatrist had treated him for depression and panic attacks. Dr. Johnson recognized that Mr. Buchanan's symptoms, coupled with his military history, were signs that he was suffering from post-traumatic stress disorder (PTSD). As a result of his diagnosed PTSD, Mr. Buchanan has experienced nightmares, impaired sleep, and suicidal ideation. Dr. Johnson, now retired, prescribed Valium to Mr. Buchanan.

The demonstrated link between Mr. Buchanan's PTSD and the underlying conduct is substantially mitigative. These circumstances take this case well outside the heartland of federal threats cases, and we respectfully submit, warrant a noncustodial sentence, particularly given Mr. Buchanan's age and his lack of any prior criminal record.

As the PSR notes, Mr. Buchanan is a 64 year old Utah resident.  He is a father of two and was a devoted husband.  At the age of 22, in 1983, Mr. Buchanan married his life partner, Stephanie.  Mr. Buchanan and his wife faced hurdles over the course of their 42 year union.  Mr. Buchanan battled PTSD, depression, insomnia, and panic disorder, stemming from his time in service.  Stephanie battled bipolar disorder.  Nonetheless, they dutifully took care of each other and their two sons.  Mr. Buchanan was devoted to supporting his children and wife as best he could.

Mr. Buchanan enlisted in the U.S. Army in 1980. He transferred to the Army Reserves in 1981 and then the Texas National Guard in 1986.  Mr. Buchanan was a tank commander in the National Guard from 1985 to 1990.  During this time, he witnessed several tank and Jeep accidents which resulted in the deaths of several men.  This experience was traumatizing, becoming the cause of his PTSD.

Mr. Buchanan's treatment with Dr. Johnson commenced in 2014.  Dr. Johnson testified that as a result of his PTSD, Mr. Buchanan suffered from "extreme insomnia and nighttime panics." Tr. (Exhibit 1) at 48.  He further described that Mr. Buchanan, once triggered, lost the ability to "think[] logically." *Id.* at 53.  Dr. Johnson described that once triggered, a person with PTSD enters something "like a hypnotic trance."  Following a trigger, the person suffers essentially the same traumatic experience again "firsthand -- not secondhand, not like looking at a photograph – it's reexperiencing it for the first time as if it's happening for the first time, even though it might be the hundredth time." *Id.* at 48.  Dr. Johnson observed that Mr. Buchanan acts impulsively, is quick to anger, and exhibits little self-control when provoked.  These symptoms are a result of his PTSD.  As Dr. Johnson explained, they are directly linked to the conduct at issue here.

6

Mr. Buchanan's PTSD made it hard for him to maintain employment. He struggled with periods of unemployment. In 2023, Mr. Buchanan began working at Amazon. He worked long night-shift hours to provide for his family. Mr. Buchanan also was in treatment for his mental health. He took a variety of medications, including Xanax and Valium. With medication, Mr. Buchanan finally was able to sleep, but suffered from side effects that left him in a disorienting haze.

By late 2023, Stephanie's condition had begun to deteriorate. Dr. Johnson described this as a "new trauma" for Mr. Buchanan. *Id.* at 63. Mr. Buchanan became her sole caregiver. He fed her, bathed her, and tended to any other needs she had. Initially unbeknownst to Mr. Buchanan and his wife, her body was succumbing to cancer. She later would be diagnosed with stage-four colon cancer. By late 2023, Mr. Buchanan was struggling under the weight of medical bills, his wife's medical needs, exhaustion, and a drug-induced fog.

In June 2025, Stephanie tragically passed away. Mr. Buchanan is devastated by the loss of his life partner. After spending the past several years tending to her every need, Mr. Buchanan struggles every day with her absence.

<u>Need For the Sentence To Be Imposed</u>

18 U.S.C. § 3553(a)(2)(A) provides that the Court shall consider "the need for the sentence imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Mr. Buchanan was struggling with severe PTSD, as well as the crushing weight of his wife's constant care needs and her impending demise. At 64 years of age, he has never before violated the law. He has the utmost respect for the law. He has abided by the conditions of his pretrial release and will continue to abide by any conditions imposed if the Court grants a term of supervision.

Mr. Buchanan is working hard to ensure that he addresses his mental health issues. He is in treatment with new medical care providers. Under the care of his new medical providers, he has begun the long and difficult process of detoxing from decades of prescribed Valium use. To safely stop taking this medication, the dosage is tapered over a long period of time, often months. *See* Chinyere I. Ogbonna and Anna Lembke, *Tapering Patients Off of Benzodiazepines*, Am. Fam. Physician J. (2017) at 2. Abruptly discontinuing this medication can be dangerous, causing severe or even life-threatening withdrawal symptoms. *See id.* A period of incarceration would be highly detrimental to Mr. Buchanan's recovery and health, as he works to detox completely from Valium.

Additionally, given Mr. Buchanan's history of severe mental health issue, a period of incarceration would be demonstrably detrimental for him. The conditions of incarceration are likely to trigger his PTSD frequently. He would struggle to receive appropriate mental health treatment in prison. A sentence of home confinement or probation would allow Mr. Buchanan to continue to receive treatment carefully tailored to his needs.

<u>Fine</u>

We respectfully submit that the Court should exercise its discretion to decline to impose a fine upon Mr. Buchanan. Imposing a monetary fine would not serve the interests of justice or the public interest. Mr. Buchanan is impecunious and cannot afford to pay a fine. PSR  99.

<u>Motion For Downward Departure or Variance</u>

A key principle of our system of justice is that "punishment should be directly related to the personal culpability of the criminal defendant." *Penry v. Lynaugh*, 492 U.S. 302, 319, (1989), abrogated on other grounds, *Atkins v. Virginia*, 536 U.S. 304, 307 (2002). When it comes to defendants with mental illness, "leniency is appropriate because two of the primary rationales for

8

punishing an individual by incarceration--desert and deterrence--lose some of their relevance when applied to those with reduced mental capacity." *United States v. Leandre*, 132 F.3d 796, 802 (D.C. Cir. 1998) (internal quotations and citations omitted).

Mr. Buchanan's history and characteristics warrant a downward variance. Mr. Buchanan's military service, resulting mental illness, his devotion to caring for his family, recent loss of his wife, and age are all relevant to the applicability of a variance here. Mr. Buchanan's PTSD, which Dr. Johnson noted is "severe," is a result of his service to our country. *United States v. Foy*, No. 21-cr-00108 (TSC), 2024 U.S. Dist. LEXIS 127506, at *3 (D.D.C. July 19, 2024) (varying downward from the appropriate range of 78 to 97 months to 40 months in light of the defendant's "history and characteristics, including his military service, mental health and PTSD diagnosis . . . ."). Mr. Buchanan has struggled and suffered for most of his life as a result of his PTSD.

Mr. Buchanan's role as a caregiver for his family dates back decades. He cared for his ailing mother and his late wife for years. His history as a caregiver is indicative of his character as a deeply empathetic man, despite the conduct at issue in this case.

Finally, Mr. Buchanan's age is relevant to the sentence he receives. Mr. Buchanan is 64 and has never before been convicted of a crime. Individuals his age are significantly less likely to reoffend. Arrest rates of individuals aged 60 to 64 are just over 2 percent and individuals older than 65 make up barely 1.5 percent of arrestees. *See* Federal Bureau of Investigation *Arrest Rates*: *Crime in the United States 2019*, FBI Uniform Crime Reporting, https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/tables/table-38/table-38.xls#overview (last visited Dec. 29, 2025). As such, the need for deterrence for elderly offenders is significantly less than their younger counterparts. Mr. Buchanan's age, coupled with his

otherwise clean criminal offense history, make him significantly less likely to reoffend than others.

Conclusion

Accordingly, we respectfully submit that the Court should sentence Mr. Buchanan to home confinement or probation, in accordance with the principles outlined in 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ Barry Coburn

Barry Coburn Bar No. 358020
Coburn & Eisenstein PLLC
1200 G Street, NW, Suite 800
Washington, DC  20005
Telephone:  (202) 643-9472
Facsimile:  (866) 561-9712
barry@coburngreenbaum.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this memorandum was served upon all counsel of record via the Court's ECF system, this 29th day of December, 2025.

/s/ Barry Coburn

Barry Coburn